[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff appeals from a sewer assessment levied by The Metropolitan District ("MDC") in accordance with Conn. Gen. Stats. 7-249. The appeal is brought pursuant to Conn. Gen. Stats. 7-250. Such appeals are heard as trials de novo, and the court heard evidence and oral argument on June 18 and 19, 1991. At the parties' request, the court ordered simultaneous post-trial briefs to be filed on August 1, 1991. The plaintiff filed its brief on that date, but the defendant's brief was not filed until August 29, 1991. The plaintiff objected to the late filing. The court sustains the objection and has not considered the defendant MDC's brief in reaching its decision. Nevertheless, the court finds in favor of the MDC on the basis that the plaintiff is not an aggrieved party within the meaning of section 7-250.
Essential preliminary facts of the case are not in dispute. On May 4, 1989, following a public hearing, the MDC published a notice of the levying of a sewer assessment on property then owned by the plaintiff on the southwest corner of Blue Hills Avenue and Wintonbury Avenue in Bloomfield. On May 12, 1989, the plaintiff properly served this appeal on the MDC and, on May 16, 1989, filed it in this court. The appeal recites that plaintiff "owns property affected by the aforementioned assessments and is aggrieved thereby." The bases of the appeal are that the assessment is in excess of any special benefit accruing to the plaintiff, that it is based upon inaccurate calculations, and that it is otherwise contrary to law. On June 21, 1989, the MDC filed a "Caveat, Assessments for Sewer, by The Metropolitan District" on the Bloomfield land records, showing the total assessment against the plaintiff's property in the amount of $169,919.04.
On November 13, 1989, while this appeal was pending but prior to construction of the sewer, the plaintiff executed a CT Page 7883 bond for deed of the subject property in favor of The First Baptist Church of Hartford. In this document, the plaintiff contracted to sell the subject property to the church on or before December 1, 1990, for a total purchase price of $1,000,000. Subsequent to completion of the sewer, the plaintiff and the church executed an amendment to the bond for deed, dated October 22, 1990. The amendment provided for a reduction in the purchase price to $775,000 and made some other changes not significant here. It did provide, in pertinent part, as follows:
 "Seller and Buyer acknowledge the existence of a sewer assessment in the amount of $169,919.04 in favor of the Metropolitan District Commission recorded in Volume 459 at Page 94 of the Bloomfield Land Records. In lieu of any required release thereof, Seller shall be allowed to escrow proceeds from the purchase price in the sum of said assessment. The escrow sum shall be placed in an interest bearing account on terms agreeable to counsel for both parties. Seller shall continue to have the exclusive right to negotiate any settlement with the MDC and to pursue its appeal of said assessment. Buyer will not impede any such litigation and agrees to execute any documentation reasonably required by Seller to allow Seller to proceed with said litigation. Seller shall further have the option to substitute a letter or letters of credit in favor of the Buyer on terms and conditions satisfactory to the Buyer and the title insurance company hereinafter referred to in lieu of the cash collateral. Seller agrees that Buyer must be able to obtain adequate title insurance over the sewer assessment based on the escrow agreement. Failure to acquire said coverage shall be deemed failure to deliver marketable title. Buyer represents that if Buyer's title company is unwilling to issue said coverage on terms acceptable to Seller (i.e. no escrow fee, funds to be deposited in specific banks) that Seller may recommend an acceptable substitute title insurance company to issue said coverage. Any commissions hereon shall accrue to Buyer's counsel.
This amendment was duly filed on the land records.
On February 2, 1991, while this appeal was still pending and prior to the trial, the plaintiff conveyed the property by warranty deed to the church. The deed makes no reference to the CT Page 7884 sewer assessment. The church is not a party to this appeal.
Although the sewer was completed in July 1990 and bills were sent to owners of other lands benefited by it, the MDC has not billed either the plaintiff or the church for payment of the assessment on the subject property.
Section 7-250 of the General Statutes provides, in relevant; part, that "(a)ny person aggrieved by any assessment may appeal to the Superior Court. . . ." This statutory requirement of aggrievement is an essential element in the court's jurisdiction over the subject matter of the appeal. "`It is well settled that the question of aggrievement is a jurisdictional one and that claims of aggrievement present an issue of fact for the determination of the trial court with the burden of proving aggrievement resting upon the plaintiffs who have alleged it. . .' Pleading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of the appeal . . . `The fundamental test for determining aggrievement encompasses a well-settled twofold determination: first, `the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party . . . must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision'" Bakelaar v. West Haven, 193 Conn. 59, 65 (1984) (citations omitted).
On the other hand, "aggrievement is established if `there is a possibility, as distinguished from a certainty, that some legally protected interest. . .has been adversely affected.'" Light Rigging Co. v. Department of Public Utility Control, 219 Conn. 168, 173 (1991) (citations omitted).
With particular significance for the facts of this case, the concept of aggrievement further requires that the appellant must sustain his interest in the subject matter of the appeal throughout the entire appellate process, including the trial of the issues to the court and the decision-making process by the court. Craig v. Maher, 174 Conn. 8, 9 (1977); Phaneuf v. Commissioner of Motor Vehicles, 166 Conn. 449, 454 (1974) ; Goldfeld v. Planning Zoning Commissioner, 3 Conn. App. 172,177 (1985). The operation of this rule is well illustrated by the circumstances of the Goldfeld case, supra. In that case, the plaintiff's interest in the property which was the subject of the appeal to the Superior Court was based on his owning an option to purchase the property. However, the option terminated by expiration of its time period after the trial of the appeal CT Page 7885 to the Superior Court but before the court rendered its decision. The Appellate Court held that the trial court erred in finding aggrievement because the plaintiff had no interest in the subject property throughout the entire appeal period; that is, to the date of the trial court's decision.
In the present case, the defendant MDC levied the assessment "upon the lands . . . and upon the owners of such land" as it found to be benefited by the construction of the sewer. Conn. Gen. Stats. 7-249. Initially, the plaintiff was such an owner. Prior to the trial of this appeal, however, the plaintiff had transferred its entire interest in the land to a third person not a party to this appeal. The MDC has made no effort to enforce payment of the assessment against the plaintiff. The only factor that could possibly still link the plaintiff to the assessment is the provision in the amended bond for deed concerning the escrow of part of the purchase price. But the plaintiff, in its brief, specifically and explicitly denies that the bond for deed imposes any liability on it to pay the assessment. Instead, the plaintiff claims that the assessment "would be an encumbrance which the church or any subsequent owner would have to deal with subject however to what plaintiff believes would be the possible right of the church to apply for a `reasonable allowance' and reduction of the assessment based on the issue of changed condition and use." Plaintiff's Brief dated July 31, 1991, p. 20. The plaintiff's claim of aggrievement, therefore, is based solely on its ownership of the property at the time when the MDC first levied the assessment. But that is not sufficient to continue to invoke the court's jurisdiction when, as here, the plaintiff divested itself of all interest in the property during the course of its appeal.
Finally, the plaintiff hints in its brief that its aggrievement in this case is based on the provisions of the amended bond for deed. Thus, the plaintiff claims that that document "simply provided plaintiff the opportunity to continue its appeal." Id. In this connection, the court notes that the MDC has not raised the issue of aggrievement and apparently acquiesces in the court's assuming jurisdiction over the plaintiff's appeal. The theory that aggrievement may be established by agreement or waiver, however, may not be sustained. "Proof of aggrievement (is) an essential prerequisite to the court's jurisdiction of the subject matter of the appeal. The parties (can) not confer jurisdiction of the subject matter of the appeal by agreeing to that prerequisite." Hughes v. Town Planning Zoning Commission, 156 Conn. 505, 509
(1968).
Based on all of the foregoing findings and conclusions, the CT Page 7886 court holds that the plaintiff has failed to allege and prove that it is aggrieved by the decision of the MDC in levying the sewer assessment on the plaintiff's former property. The appeal is, therefore, dismissed.
MALONEY, J.